STATE OF NORTH CAROLINA v. SENECA LEVARTUS SMITH

. No. COA06-1631

(Filed 15 January 2008)

**1. Criminal Law— jury questions—supplemental instruc-
tions—review by defense counsel not required**

The trial court did not violate defendant's statutory rights
under N.C.G.S. § 15A-1234 by refusing to allow defense counsel to
review questions from the jury before providing instructions in
response to the questions because: (1) where instructions given
do not add substantively to previous instructions, the latter
instructions are not additional instructions as that term is con-
templated in N.C.G.S. § 15A-1234(c), and the trial judge need not
consult with the parties or give them an opportunity to be heard
in advance of giving such instructions; and (2) a review of the
court's instructions in response to the jury questions in the in-
stant case revealed that they were simply a reiteration of the
court's original instructions and cannot be characterized as addi-
tional instructions. Assuming arguendo that the court's subse-
quent instructions were additional instructions within the mean-
ing of N.C.G.S. § 15A-1234, defendant did not object to the
instructions and failed to show that absent the additional instruc-
tions the jury would have reached a different result.

**2. Constitutional Law— right to be present—refusing to al-
low defendant to review jury questions**

Although the trial court violated defendant's right under
Article I, § 23 of the North Carolina Constitution to be present at
every stage of the proceeding in a first-degree murder case by
refusing to allow defense counsel to review the jury questions
before giving supplemental instructions in response thereto, the
State met its burden to show the violation was harmless beyond
a reasonable doubt, because: (1) the record revealed that the
questions indicated that the jury had already agreed unanimously
on second-degree murder, and was confused as to whether their
rejection of first-degree murder had to be unanimous; (2) the
court correctly instructed the jury as to their duty by reiterating
its original instructions; and (3) defendant was ultimately con-
victed of second-degree murder, and the court's instructions did
not contribute to the verdict obtained.

**3. Constitutional Law— effective assistance of counsel—failure to inform defense counsel of contents of questions from jury**

Although the trial court erred by refusing to inform defense counsel of the contents of the questions from the jury in a first-degree murder case, it did not violate defendant's Sixth Amendment right to effective assistance of counsel, because: (1) this case did not present a situation where there was a likelihood that any lawyer would have been prevented from rendering effective assistance of counsel; (2) after the trial court received the questions, it repeated its original instructions; and (3) the circumstances did not rise to the level of a total deprivation of counsel.

**4. Criminal Law— right to remain silent—prosecutor's argument—defendant's failure to present evidence of alibi**

The trial court in a first-degree murder case did not improperly allow the prosecutor to comment on defendant's decision not to testify because the prosecutor's comments did not touch on defendant's decision not to testify, but instead reminded the jury that no alibi witnesses had been presented; furthermore, the prosecutor's opening statement that defendant was the last person to see the victim alive was supported by the evidence.

**5. Criminal Law— supplemental instructions—no coercion of verdict**

The trial court's supplemental instructions to the jury in a first-degree murder case were not coercive because: (1) defendant's contention that the jury was deadlocked was not supported by the record; (2) assuming arguendo the jury was deadlocked, the instructions were nothing more than a reiteration of the court's original charge; (3) at no time did the trial court inform the jurors that they would not be able to go home until they reached a unanimous verdict or that they would remain together until they reconciled their differences; and (4) the court gave instructions that the members of the jury should not compromise their beliefs to reach a verdict.

**6. Homicide— · first-degree murder—instruction on second-degree—invited error**

The trial court in a first-degree murder prosecution did not commit plain error by instructing the jury on the offense of second-degree murder because: (1) defendant expressly requested an instruction on second-degree murder during the charge con-

**STATE v. SMITH**

[188 N.C. App. 207 (2008)]

ference; and (2) assuming arguendo that defendant is entitled to review on this issue, defendant failed to show plain error even though a rational jury could infer that there had been premeditation and deliberation since rejecting that inference was the jury's prerogative, and the evidence presented at trial did not preclude a finding of provocation on the part of decedent.

## 7. Homicide— murder—motion to dismiss—sufficiency of evidence

The trial court did not commit plain error by denying defendant's motion to dismiss the charge of murder because the State presented substantial evidence of an unlawful killing and that defendant was the perpetrator.

Appeal by defendant from judgment entered 10 October 2006 by Judge James E. Hardin, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 23 August 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Matthew D. Wunsche, for defendant-appellant.*

STEELMAN, Judge.

When the trial court's supplemental jury instructions are not additional instructions within the meaning of N.C. Gen. Stat. § 1234, the court does not err when it does not consult with the parties or give them an opportunity to be heard before giving the instructions. When the State shows that the violation of defendant's right to presence under Article I, § 23 of the North Carolina Constitution was harmless beyond a reasonable doubt, a new trial is not warranted. When the defendant does not suffer a total deprivation of counsel, a new trial is not warranted. When the prosecutor's closing argument is proper, the trial court's failure to intervene *ex mero motu* is not an abuse of discretion. When the jury is not deadlocked, and the court's instructions are not coercive, a new trial is not warranted. When defendant requests an instruction on the lesser-included offense, and the evidence supports the instruction, the trial court does not err in giving the instruction. When the State presented sufficient evidence of murder and that defendant was the perpetrator, the court does not err in denying defendant's motion to dismiss.

## I.  Factual Background

On 5 November 2003, Seneca Levartus Smith (defendant), defendant's cousin, Shelvekkeo Smith (Smith), and a man named Daniel went to the apartment of Latasha Renee Alexander. The men drank and smoked for several hours, after which time Smith and Daniel left the apartment. At approximately 3 a.m., defendant called a cab to take him back to Smith's house, where he resided. Defendant went inside to get money from Smith to pay for the cab and returned with a $20 bill. The cab driver drove defendant to a nearby gas station to get change, and then drove him back to Smith's home. The cab driver's testified that he saw defendant enter Smith's house after he dropped him off the second time.

According to defendant, he did not go into Smith's home, but instead went to a friend's house and then to his mother's home. Defendant returned to Smith's house at approximately 3:00 p.m. on the afternoon of 6 November 2003, at which point he and his brother, Jermaine Jackson, discovered Smith's body in a bedroom of the home.

The High Point Police officer who responded to the 911 call found Smith's body in the bedroom in a pool of blood, covered by a mattress from the waist up. Police officers found two samurai swords in the home; one lay in the bedroom near the body, and one was found in another bedroom.

On 29 September 2004, defendant was indicted for first degree murder of Smith. The jury returned a verdict of guilty of second degree murder. The trial court found defendant to be a prior record Level IV for felony sentencing purposes and entered judgment imposing 251 to 311 months imprisonment. Defendant appeals.

## II.  Jury Questions

### A.  Statutory Violation

[1] In his first argument, defendant contends that the trial court erred in refusing to allow defense counsel to review questions from the jury before providing instructions in response to the questions. Defendant claims this violated his statutory rights under N.C. Gen. Stat. § 15A-1234. We disagree.

After the jury has retired to deliberate, the trial court "may give appropriate additional instructions to . . . . respond to an inquiry of

the jury made in open court[.]" N.C. Gen. Stat. § 15A-1234(a) (2005). The statute further provides that:

> Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard.

N.C. Gen. Stat. § 15A-1234(c). However, where instructions given do not add substantively to previous instructions, "the latter instructions are not 'additional instructions' as that term is contemplated in section 15A-1234(c), and the trial judge need not consult with the parties or give them an opportunity to be heard in advance of giving such instructions." *State v. Rich*, 132 N.C. App. 440, 448, 512 S.E.2d 441, 447 (1999) (citation omitted).

The trial court originally instructed the jury as follows:

> The defendant, Seneca Levartus Smith, has been charged with first degree murder. Under the law and evidence in this case, it is your duty to return one of the following verdicts: Guilty of first degree murder; or, guilty of second degree murder; or, not guilty. . . .

> If you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of first degree murder. If you do not find the defendant guilty of first degree murder, you must then determine whether he is guilty of second degree murder. . . .

> If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty. . . .

> Ladies and gentlemen, you may not return a verdict until all twelve jurors agree unanimously. You may not render a verdict by majority vote.

The jury deliberated for five days before returning a verdict. On the afternoon of the fourth day of deliberations, the trial court received two questions from the jury, the first of which stated:

> This note divulges our deliberations! We would appreciate this not read in open court! We the jury request *instruction* on our *method* of deliberations as to coming to a unanimous verdict. We all agree that 2nd degree murder criteria is met. All but one juror

is comfortably convinced of 2nd degree[.] This lone juror has the attached question.

(In short, if we unanimously agree on 2nd degree murder criteria, and one juror is more convinced of 1st degree also, then do we interpret your instructions as now having to return a 2nd degree verdict.)

See lone juror's attached question.

(emphasis in original). The second question stated:

We are unanimous that the criteria for 2nd degree has been met. Some jurors are convinced that the criteria for first degree has also been met. One juror interprets the instructions to say that as long as they are convinced that first degree has been proven, they are not to agree to a second degree verdict. The other jurors interpret the instructions to say that if we can't unanimously agree on first degree, we should then return the verdict of second, despite some jurors think that both second and first have been proven. Which interpretation is correct?

The court did not permit either party to review the questions, did not inform the parties of the instructions he intended to give in response, and did not give either party an opportunity to be heard. Instead, the court gave the following instructions:

The defendant, Seneca Levartus Smith, has been charged with first degree murder. Under the law and evidence in this case, it is your duty to return one of the following verdicts: Guilty of first degree murder; or, guilty of second degree murder; or, not guilty. You may not return a verdict until all twelve jurors agree unanimously. You may not render a verdict by majority vote. I think what you are asking me and I will instruct you to consider first degree murder first, and to determine if the defendant is guilty or not guilty beyond a reasonable doubt unanimously. And depending upon what your verdict is with respect to that charge, if you find the defendant not guilty of first degree murder, then you would move on to second degree murder.

Neither defense counsel nor the State objected to the court's instructions, and both parties answered in the negative when the court inquired if they had additional requests.

A careful review of the court's instructions in response to the jury questions reveals that they were simply a reiteration of the court's

original instructions and cannot be characterized as additional instructions. We therefore hold that it was unnecessary for the court to inform the parties of the supplemental instructions it intended to give. *See Rich*, 132 N.C. App. at 448, 512 S.E.2d at 447. This argument is without merit.

Assuming *arguendo* that the court's subsequent instructions were additional instructions within the meaning of the N.C. Gen. Stat. § 15A-1234, defendant did not object to the instructions. When a defendant does not object to instructions, the alleged error is subject to review for plain error only. *State v. Odom*, 307 N.C. 655, 659-61, 300 S.E.2d 375, 378-79 (1983).

> Plain error is error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached. To satisfy the requirements of the plain error rule, the Court must find error, and that if not for the error, the jury would likely have reached a different result.

*State v. Ramirez*, 156 N.C. App. 249, 256, 576 S.E.2d 714, 720 (2003) (citations and quotations omitted).

Defendant has made no showing that, absent the additional instructions given to the jury, the jury would have reached a different result. To the contrary, the contents of the questions reveals that, at the time the additional instructions were given, the jury had independently reached a unanimous verdict regarding the charge of second degree murder.

When viewed as a whole, we are not "convinced that absent the error the jury probably would have reached a different verdict." *See State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) (citation omitted). Defendant has not demonstrated that the alleged additional instructions had an impact on the jury's verdict. This argument is without merit.

## B. Right to Presence

[2] In his second argument, defendant contends that the trial court's refusal to allow defense counsel to review the jury questions deprived him of his right under Article I, § 23 of the North Carolina Constitution to be present at every stage of the proceeding. Although we agree that defendant was denied his right to presence, we hold that the violation was harmless beyond a reasonable doubt.

STATE v. SMITH

[188 N.C. App. 207 (2008)]

Article I, § 23 of the North Carolina Constitution requires that a defendant be present at every stage of the proceeding in a capital case. *State v. Payne*, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1987). When a trial court communicates with a juror without disclosing the contents of the communication to the defendant, the defendant's actual presence in the courtroom can be negated by such communication. *State v. Jones*, 346 N.C. 704, 709, 487 S.E.2d 714, 718 (1997) (citation omitted).

Where a defendant is prejudiced by errors relating to rights arising under the United States Constitution, the burden is upon the State to demonstrate that the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2005). Although the right to presence arises under the North Carolina Constitution, the North Carolina Supreme Court has held that "the proper standard of reversal in reviewing violations under article I, section 23, of defendant's right to be present at all stages of his capital trial is the rigorous standard prescribed for review of violations of defendant's right to be present at trial under the federal Constitution." *State v. Huff*, 325 N.C. 1, 33, 381 S.E.2d 635, 653 (1989), *vacated and remanded on other grounds*, 497 U.S. 1021, 110 S. Ct. 3266, 111 L. Ed. 2d 777 (1990). Thus, a new trial is appropriate unless the State proves the error to be harmless beyond a reasonable doubt. *Jones*, 346 N.C. at 710, 487 S.E.2d at 718. If the transcript shows the substance of the court's conversation with the juror or the court reconstructs the substance of the conversation on the record, the State may show that the error was harmless beyond a reasonable doubt. *Id.* (citation omitted).

The record reveals that the questions indicated that the jury had already agreed unanimously on second-degree murder, and was confused as to whether their rejection of first-degree murder had to be unanimous. The court correctly instructed them as to their duty by reiterating its original instructions. Defendant was ultimately convicted of second degree murder, and the court's instructions "did not contribute to the verdict obtained." *Huff*, 325 N.C. at 33-34, 381 S.E.2d at 653-54 (quoting *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710 (1967)).

We hold that the State has shown that the error was harmless beyond a reasonable doubt, and a new trial is not warranted. This argument is without merit.

## C.  Right to Effective Assistance of Counsel

[3] In his third argument, defendant contends that the trial court's refusal to inform defense counsel of the contents of the questions from the jury violated his Sixth Amendment right to effective assistance of counsel. We disagree.

A criminal defendant is guaranteed the right to be represented by counsel, and this right has been interpreted as the right to effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 654-55, 80 L. Ed. 2d 657, 664-65 (1984). A defendant is entitled to relief for denial of effective assistance of counsel without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. *Cronic*, 466 U.S. at 659 n.25, 80 L. Ed. 2d at 668 n.25. If the circumstances of the trial establish the likelihood that even the most competent attorney would be prevented from providing effective assistance, prejudice to the defendant is presumed. *State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 336 (1993) (citation omitted).

Defendant claims that the trial court's decision not to disclose the questions to defense counsel created circumstances under which no lawyer could have rendered effective assistance. Defendant attempts to equate the circumstances of his trial with those in *State v. Pait*. We disagree. In *Pait*, the court vacated the defendant's sentence due to improper pressure exerted by the trial judge. *State v. Pait*, 81 N.C. App. 286, 290, 343 S.E.2d 573, 576 (1986). In that case, when defendant entered a plea of not guilty, the trial judge "became visibly agitated," "said in what appeared to be an angry voice that he was tired of 'frivolous pleas,'" and "directed counsel to confer with defendant and return with an 'honest plea.'" *Pait*, 81 N.C. App. at 287-88, 343 S.E.2d at 575. This Court held that, due to the trial judge's improper comments and the "unusual celerity with which the State and court moved," defendant was denied effective assistance of counsel. *Pait*, 81 N.C. App. at 290, 343 S.E.2d at 576.

This case does not present a situation where there is a likelihood that any lawyer would have been prevented from rendering effective assistance. After the trial court received the questions, it repeated its original instructions. Although the court erred in refusing to allow defense counsel to examine the questions, we hold that these circumstances do not rise to the level of a total deprivation of counsel. This argument is without merit.

### III. Argument by Prosecutor

**[4]** In his fourth argument, defendant contends that the trial court erred in allowing the prosecutor to comment on defendant's decision not to testify. We disagree.

Although a prosecutor may not comment on the defendant's decision not to testify, the prosecutor may point out to the jury the defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State. *State v. Parker*, 350 N.C. 411, 430-31, 516 S.E.2d 106, 120 (1999), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681, 120 S. Ct. 808 (2000) (quoting *State v. Mason*, 317 N.C. 283, 287, 345 S.E.2d 195, 197 (1986)). A trial court is not required to intervene "unless the argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial." *State v. Smith*, 351 N.C. 251, 269, 524 S.E.2d 28, 41 (2000) (citation omitted). Where a defendant does not object to the statements, the standard of review on appeal is whether the prosecutor's remarks were so grossly improper that the trial court's failure to intervene ex mero motu constituted an abuse of discretion. *State v. Barden*, 356 N.C. 316, 356, 572 S.E.2d 108, 134 (2002).

In the State's closing argument, the Assistant District Attorney pointed out that the defendant had not presented evidence of an alibi, arguing:

> But the defendant has not put up on[e] single solitary witness to show evidence of any alibi, that he was anywhere else. Somebody from—he tells Detective O'Connor he ran into somebody later that morning. He went down to the curb market. He was with his brother for a period of time, Jermaine Jackson. He's apparently been sitting in the courtroom. Not one single bit of evidence of alibi that he was anywhere else . . .

In his opening statement, the prosecutor stated that defendant "was the last one that you'll hear from that saw Shelvekkeo [Smith] alive during the morning hours of November the 6th of 2003."

Defendant contends that the comments were improper and that the court should have intervened to admonish the prosecutor, or should have given a curative instruction. However, read in the context of the entire closing argument, it appears that the prosecutor was not referring to defendant in his remarks to the jury. As defendant had obviously been sitting in the courtroom for the entire trial, the prosecutor's statement about the individual who had "apparently

been sitting in the courtroom" refers to defendant's brother, Jermaine Jackson. The prosecutor's comments did not touch on defendant's decision not to testify, but instead reminded the jury that no alibi witnesses had been presented.

Regarding the prosecutor's opening statement, the record shows that evidence was in fact presented that defendant was the last person who saw the victim alive. This evidence fulfilled the Assistant District Attorney's forecast in his opening statement. The prosecutor's comments were permissible and not grossly improper, and we hold that the trial court did not abuse its discretion in failing to intervene under the facts of this case. This argument is without merit.

### IV. Jury Instructions

[5] In his fifth argument, defendant contends that the trial court's supplemental instructions to the jury were coercive. We disagree.

N.C. Gen. Stat. § 15A-1235 (2005) provides guidelines for instructing deadlocked juries. The statute provides in pertinent part:

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

. . .

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

N.C. Gen. Stat. § 15A-1235(b).

Defendant contends that the jury questions indicated that the jury was deadlocked, and that the court erred when it failed to inform jurors that they should not forsake their own "well-founded convictions or judgment to the views of the majority . . ." *State v. Alston*, 294 N.C. 577, 593, 243 S.E.2d 354, 364 (1978) (citations omitted).

Defendant's contention that the jury was deadlocked is not supported by the record. On more than one occasion, the court asked the jury foreman whether the jury was making progress towards a verdict. Each time he was asked, the foreman indicated that the jury was making progress. Thus, at no time was the jury deadlocked, and N.C. Gen. Stat. § 15A-1235 is inapplicable.

Assuming *arguendo* that the jury was deadlocked, we hold that the trial court's instructions of which defendant complains were not

coercive. The instant case is distinguishable from *State v. Roberts*, 270 N.C. 449, 154 S.E.2d 536 (1967). In *Roberts*, the trial court used the problematic language "I am going to ask that you again retire and consider the case until you reach a unanimous verdict[]" at the end of its jury instruction. *Roberts*, 270 N.C. at 451, 154 S.E.2d at 537. This sort of compelling, coercive language is absent from the instant case. The instructions here are nothing more than a reiteration of the court's original charge. At no time did the trial court inform the jurors that they would not be able to go home until they reached a unanimous verdict or that they would remain together until they reconciled their differences.

Further, in *Roberts*, the trial judge altogether failed to instruct the jury that no one was to surrender his personal beliefs in order to agree with a majority on a verdict. In contrast, the court in the instant case gave instructions that the members of the jury should not compromise their beliefs to reach a verdict.

When viewed in the context of the entire trial, we hold that the court's instructions were not coercive. This argument is without merit.

## V.  Instructions on Lesser-Included Offense

[6] In his sixth argument, defendant contends that the trial court committed plain error when it instructed the jury on the offense of second-degree murder as there was insufficient evidence to support that instruction. We disagree.

N.C. Gen. Stat. § 15A-1443(c) (2005) provides that "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." *Id.* A defendant who invites error will not be heard to complain on appeal. *State v. Williams*, 333 N.C. 719, 728, 430 S.E.2d 888, 893 (1993) (noting "defendant foreclosed any inclination of the trial court to instruct on the lesser-included offense of second-degree murder"); *State v. Gay*, 334 N.C. 467, 485, 434 S.E.2d 840, 850 (1993); *State v. Patterson*, 332 N.C. 409, 415, 420 S.E.2d 98, 101 (1992).

Defendant cites *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981) for the proposition that a court cannot give jury instructions which are not supported by the evidence. However *Taylor* did not address the issue of invited error and therefore is inapplicable to the facts of this case.

In the instant case, counsel for defendant expressly requested an instruction of second-degree murder during the charge conference. Thus, defendant is not entitled to relief for any alleged error in the trial court's instructions. This argument is without merit.

Assuming *arguendo* defendant is entitled to review on this issue, he is limited to plain error review since he did not object to the instructions. *State v. Duke*, 360 N.C. 110, 133, 623 S.E.2d 11, 26 (2005). Accordingly, defendant must show that "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted).

> Defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater . . . due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence.

*State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (citations and quotations omitted). The weight to be given circumstantial evidence is a decision for the jury. *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989). Likewise, issues of credibility are matters solely within the province of the jury. *State v. Jordan*, 321 N.C. 714, 717, 365 S.E.2d 617, 619 (1988).

Defendant contends the evidence only supported instructions on premeditated and deliberated murder. Defendant cites evidence that the victim suffered 73 wounds, and that, based on this number, no rational jury could conclude that the killer did not act with premeditation and deliberation.

The State presented evidence at trial which would support a verdict of second-degree murder. Lieutenant George Ferguson, a responding officer to the crime scene, testified "[t]he bedroom was in disarray. Appeared to have been some type of struggle or some type of fight inside the bedroom." The victim's mother, Marisa Hussain, testified that her son collected swords and practiced martial arts.

While a rational jury could infer that there had been premeditation and deliberation, rejecting that inference was the jury's prerogative, and the evidence presented at trial did not preclude a finding of provocation on the part of decedent.

Defendant has failed to show plain error on the part of the trial court in instructing the jury on the offense of second-degree murder. This argument is without merit.

## V. Denial of Defendant's Motion to Dismiss

[7] In his final argument, defendant contends that the trial court committed plain error when it denied his motion to dismiss on the grounds that the State did not present sufficient evidence of murder. We disagree.

> Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.

*State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion." *State v. Murray,* 154 N.C. App. 631, 634, 572 S.E.2d 845, 847 (2002) (citation omitted). The court must view the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. *State v. Fritsch,* 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000).

The elements of a charge of murder are: (1) the unlawful killing, (2) of another human being, (3) with malice. *State v. McAllister,* 138 N.C. App. 252, 256, 530 S.E.2d 859, 862 (2000).

Evidence was presented at trial of an unlawful killing of Shelvekkeo Smith. There was also sufficient evidence presented of defendant being the perpetrator. The cab driver who drove defendant home from Ms. Alexander's apartment testified that defendant entered the house on Ragan Avenue upon exiting the cab. Defendant's statements to officers placed him in the presence of the victim at 4:00 or 5:00 a.m. on 6 November 2003. In his statement to Detective O'Connor, defendant recounted that, when he discovered the body of Shelvekkeo Smith, although he never entered the bedroom, he could see cuts on the victim's face and neck. However, the investigating officer testified that there was a mattress covering the victim from the waist up, such that the head and neck were not visible.

At trial, the victim's mother, Marisa Hussain, testified that she had a conversation with defendant concerning Indian death ceremonies

in which defendant stated he had "talked with an American Indian Chief and the Chief said to him that when their people died, they sprinkled a powder . . . [like] Comet, Ajax or something . . . because it makes it easier to go into the next life . . ." Police officers observed a white powder sprinkled around the body of Smith, on the floor throughout the house, and down the rear steps. Officers later found a pair of blue work boots in the trash can outside of the back door which contained the white powder substance in the tread. Defendant's girlfriend testified that defendant was wearing the same type and style of boots the previous evening.

The State presented substantial evidence of an unlawful killing and that defendant was the perpetrator. We hold that the trial court properly denied defendant's motion to dismiss, and this argument is without merit.

Defendant has failed to argue his remaining assignments of error, and they are deemed abandoned. N.C. R. App. P. Rule 28(b)(6) (2007).

NO PREJUDICIAL ERROR.

Judges ELMORE and STROUD concur.