McGEE, Chief Judge.
 

 *765
 
 Gyrell Shavonta Lee ("Defendant") appeals his conviction for second-degree murder. Defendant contends that the trial court erred by: (1) omitting a no duty to retreat instruction from its jury instructions; (2) instructing the jury it could find Defendant was the initial aggressor despite a lack of evidence to support that theory; (3) not instructing the jury on the lawful defense of a third person; (4) excluding a non-hearsay statement made by Defendant; (5) violating a statutory mandate by requiring the jury to deliberate for an unreasonable length of time; and (6) not considering evidence of aggravating or mitigating factors in sentencing Defendant as mandated by statute. We find no error.
 

 I. Background
 

 Defendant celebrated New Year's Eve on 31 December 2012 in Elizabeth City, where Defendant lived with his brother. Shortly after midnight, Defendant exited a home across the street from his residence and encountered several individuals, including Quinton Epps ("Epps") and Defendant's cousin, Jamieal Walker ("Walker"), congregated around a blue 1993 Grand Marquis automobile. Epps and Walker were engaged in a heated verbal dispute. Walker seemed "very agitated" and told Defendant that Epps "felt verbally disrespected." Epps left in the Grand Marquis, and Defendant went inside his residence.
 

 About twenty minutes later, a black Cadillac STS vehicle ("the Cadillac") approached Defendant's residence. Defendant and Walker were standing "beside the house ... in the front yard." Defendant saw Epps get out of the Cadillac's back passenger side. Walker and Epps began arguing, and Defendant observed that Epps was "verbally disrespectful
 
 *683
 
 [and] verbally aggressive." Epps got back into the Cadillac and it sped away.
 

 Approximately twenty minutes later, a burgundy Mitsubishi Galant ("the Mitsubishi") drove up alongside Defendant's backyard, stopping briefly. Defendant retrieved a .45 caliber handgun from his car and concealed it on his person, "[out of] instinct," although Defendant believed "Epps ... wasn't a threat at th[at] time." The Mitsubishi pulled off, circled
 
 *766
 
 the block, and parked two or three houses down from Defendant's residence in front of a cemetery across the street, at the intersection of Shepard Street and Herrington Road. Epps and several other individuals exited the Mitsubishi.
 

 Defendant and Walker walked down the street to talk to Epps. Epps and Walker began arguing. Defendant saw Epps had a gun behind his back. The argument escalated, and Walker punched Epps in the face. After being punched, Epps leaned back, grabbed the hood of Walker's jacket, and shot Walker in the stomach. When Epps shot Walker a second time, Defendant withdrew his handgun. Walker was able to get up, and Epps continued shooting at Walker as he attempted to flee. After Epps fired a final shot at Walker, Epps turned and pointed his gun at Defendant. Before Epps could fire, Defendant shot Epps several times. Epps died as a result of a gunshot wound to his torso inflicted by Defendant.
 

 Police Chief Eddie Buffaloe ("Chief Buffaloe") and other officers from the Elizabeth City Police Department ("ECPD") arrived at the scene of the shooting at approximately 2:30 a.m., after noticing a crowd gathered at the intersection of Shepard Street and Herrington Road. Chief Buffaloe observed an individual, later identified as Epps, lying in the road with apparent gunshot wounds. After Epps was transported from the scene, ECPD K-9 Officer David Sutton performed a search of the area and discovered Defendant's .45 caliber handgun, its magazine empty, beneath a trash can located behind Defendant's residence.
 

 ECPD Crime Scene Investigator Leroy Owen ("Investigator Owen") was also called to the scene. Investigator Owen did a walk-through, marking potential evidence and taking photographs. Among other things, Investigator Owen collected a spent, bloodied bullet from the spot where Epps had been lying on the ground; five 9 millimeter shell casings; and eight .45 caliber shell casings. Investigator Owen noticed a "divot" in the ground where he found the spent bullet. Subsequent ballistics testing matched the spent bullet, the .45 caliber bullet casings, and the bullets removed from Epps's body during an autopsy, with Defendant's handgun. Walker's body was discovered several hours later approximately 120 yards from where Epps's body was found. Defendant was indicted for first-degree murder on 7 January 2013.
 

 At trial, the State's sole eyewitness, Quentin Jackson ("Jackson"), testified that, shortly after leaving work at 2:00 a.m. on 1 January 2013, he drove up to a stoplight on Shepard Street and saw Epps and Walker running nearby and then simultaneously fall to the ground. Jackson
 
 *767
 
 testified he saw "one guy reach over on the guy that was falling and shoot [him], and then ... one get up and run and one continuously get shot." According to Jackson, Walker was able to run away and Epps remained on the ground, at which point Defendant "came out of nowhere," stood over Epps, and began repeatedly shooting Epps at close range. Jackson also testified that another unidentified individual was shooting at Defendant, but that Epps never aimed at, or shot, Defendant.
 

 ECPD Officer Joseph Felton ("Officer Felton") interviewed Jackson at the scene on the night of the shooting, and Jackson described seeing "five black guys run up to the victim and shoot[ ] him point blank." When asked by Officer Felton to describe the shooter, Jackson said it was "a big dude with long dreads wearing an orange sweater" who had taken off running after the shooting. Defendant did not have dreadlocks at the time of the shooting. Jackson later denied ever having given this account. Defendant maintained that he shot Epps only after Epps pointed a gun at Defendant, and Defendant denied continuing to shoot after seeing Epps fall to the ground. Defendant was found guilty of second-degree murder and sentenced
 
 *684
 
 to a term of 192 to 243 months' imprisonment. Defendant appeals.
 

 II. Omission of No Duty to Retreat Jury Instruction
 

 A. Standard of Review
 

 Defendant first argues the trial court erroneously omitted a no duty to retreat instruction from its jury instructions. The "[d]efendant did not object to the ... instruction given by the trial court, and our review is therefore limited to plain error."
 
 State v. Withers,
 

 179 N.C.App. 249
 
 , 257,
 
 633 S.E.2d 863
 
 , 868 (2006). To show plain error,
 

 a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citing
 
 State v. Odom,
 

 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) ) (internal quotation marks omitted). We apply plain error "cautiously and only in the exceptional case."
 

 Id.
 

 Defendant cites
 
 Withers
 
 for the proposition that "[a]lthough there was no objection, the omission of part of [the pattern instruction] is preserved for
 
 de novo
 
 review because the trial court stated it would instruct according to the pattern." Defendant misapplies
 
 Withers.
 
 The portion of that opinion Defendant relies upon addressed the trial court's failure to
 
 *768
 
 " instruct [the jury] on not guilty by reason of self-defense
 
 as a possible verdict
 
 in its final mandate to the jury."
 
 179 N.C.App. at 255
 
 ,
 
 633 S.E.2d at 867
 
 (emphasis added). In the present case, the trial court properly instructed the jury that "if the State has failed to satisfy you beyond a reasonable doubt that the defendant did not act in self-defense, ... it will be your duty to return a verdict of not guilty." The
 
 Withers
 
 defendant also alleged the trial court erred by failing to instruct the jury, as part of its self-defense instruction, that the defendant did not have a duty to retreat.
 

 Id.,
 

 179 N.C.App. at 256
 
 ,
 
 633 S.E.2d at 868
 
 . On that issue, this Court concluded that because the defendant did not object to the self-defense instruction, review was limited to plain error.
 
 See also
 

 State v. Davis,
 

 177 N.C.App. 98
 
 , 102,
 
 627 S.E.2d 474
 
 , 477 (2006) (holding that "[s]ince defendant neither requested the [no duty to retreat] instruction nor objected to the court's failure to give the instruction, we review the assignment of error under the plain error standard.").
 

 More recently, in
 
 State v. Eaton,
 
 --- N.C.App. ----,
 
 781 S.E.2d 532
 
 ,
 
 2016 WL 47973
 
 (2016) (unpublished), this Court rejected a similar argument,
 
 i.e.,
 
 that an instructional issue was preserved despite the defendant's lack of objection because the trial court indicated it would give a specific pattern instruction and then omitted a portion of the pattern instruction from its instructions to the jury. In the present case, as in
 
 Eaton,
 

 the trial court did not merely indicate that it would instruct pursuant to [the pattern instruction] and then fail to instruct as indicated, as [D]efendant insinuates.... The trial court ... repeated the instructions it intended to offer. The trial court never indicated it would give the portion of [the pattern instruction] which [D]efendant now contends was erroneously omitted and [D]efendant did not take issue with the proposed instruction.... [T]he trial court instructed the jury precisely as proposed, [and] ... the trial court's reference to the pattern instruction did not preserve the issue for appeal absent an objection by defendant.
 

 Id.,
 

 2016 WL 47973
 
 at *11.
 

 B. Analysis
 

 Defendant contends the omission of a no duty to retreat instruction amounted to plain error because, if the jury had been instructed on the right to stand one's ground in a place where one has a lawful right to be,
 
 *769
 
 Defendant " probably would not have been convicted of second-degree murder." We disagree.
 

 "[W]here supported by the evidence in a claim of self-defense, an instruction negating [a] defendant's
 
 duty to retreat
 
 in his home or premises must be given even in the absence of a request by [the] defendant."
 
 State v. Morgan,
 

 315 N.C. 626
 
 , 643,
 
 340 S.E.2d 84
 
 , 95 (1986) (emphasis in original);
 

 *685
 

 see also
 

 Davis,
 

 177 N.C. App. at 102
 
 ,
 
 627 S.E.2d at 477
 
 (finding that "[a] comprehensive self-defense instruction requires instructions that a defendant is under no duty to retreat
 
 if the facts warrant it
 
 [.]" (emphasis added)). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to [the] defendant."
 
 Withers,
 

 179 N.C. App. at 257
 
 ,
 
 633 S.E.2d at 868
 
 (quoting
 
 State v. Mash,
 

 323 N.C. 339
 
 , 348,
 
 372 S.E.2d 532
 
 , 537 (1988) (alteration in original)).
 

 The trial court in this case instructed the jury, pursuant to N.C.P.I.-Crim. 206.10
 
 [1]
 
 and as agreed upon by the parties, that Defendant "would be not guilty of any murder or manslaughter if [he] acted in self-defense and ... was not the aggressor in provoking the fight and did not use excessive force under the circumstances." The court omitted the following sentence found in N.C.P.I.-Crim. 206.10: "Furthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be." That sentence in the pattern instructions includes the following footnote: "See N.C.P.I.-Crim. 308.10."
 
 [2]
 
 In turn, N.C.P.I.-Crim. 308.10, the pattern instruction for self-defense where retreat is at issue, "is to be used if the
 
 evidence shows
 
 that the defendant was at a place where the
 
 defendant had a lawful right to be
 
 ... when the assault on the defendant occurred" and that the defendant was not the aggressor. Defendant argues that, having undertaken to instruct the jury according to N.C.P.I.-Crim. 206.10, the trial court erroneously omitted the disputed sentence of the pattern instruction, and was further required to read N.C.P.I.-Crim. 308.10 in its entirety. These arguments are without merit.
 

 Both the omitted sentence from N.C.P.I.-Crim. 206.10, and N.C.P.I.-Crim. 308.10 generally, refer specifically to "a place where the
 
 *770
 
 defendant has a lawful right to be."
 
 See also
 

 N.C. Gen. Stat. § 14-51.2
 
 (f) (2015) ("A
 
 lawful occupant within his or her home, motor vehicle, or workplace
 
 does not have a duty to retreat from an intruder in the circumstances described in this section." (emphasis added));
 
 N.C. Gen. Stat. § 14-51.3
 
 (a) (2015) ("[A] person is justified in the use of deadly force and does not have a duty to retreat
 
 in any place he or she has the lawful right to be
 
 if either of the following applies...." (emphasis added)). Thus, Defendant's argument, that a different verdict probably would have been reached but for the omission of a no duty to retreat jury instruction, presumes Defendant was in a place where he had a lawful right to be, for purposes of a no duty to retreat defense, when he shot Epps.
 

 Defendant contends he "was where he had a right to be-the street by his home-when he was confronted by Epps, who had a pistol in his hand and had just fatally wounded [Walker]." However, the right to stand one's ground is more limited than Defendant suggests. Our Supreme Court has stressed that "where the person attacked is not in
 
 his own dwelling, home, place of business, or on his own premises
 
 , then the degree of force he may employ in self-defense is conditioned by the type of force used by his assailant."
 
 State v. Pearson,
 

 288 N.C. 34
 
 , 43,
 
 215 S.E.2d 598
 
 , 605 (1975) (emphasis added).
 
 Compare with
 

 State v. Johnson,
 

 261 N.C. 727
 
 , 729-30,
 
 136 S.E.2d 84
 
 , 86 (1964) (holding that "when a person ... is attacked
 
 in his own home or on his own premises
 
 , the law imposes on him no duty to retreat before he can justify his fighting in self defense [sic], regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm." (emphasis added));
 
 Withers,
 

 179 N.C. App. at 259
 
 ,
 
 633 S.E.2d at 870
 
 (finding trial court erred by failing to instruct the jury on duty to retreat where, in light of the facts in evidence, "the jury could have found that defendant ...
 
 was
 

 *686
 

 attacked in his home or on his premises
 
 ." (emphasis added));
 
 State v. Everett,
 

 163 N.C. App. 95
 
 , 102,
 
 592 S.E.2d 582
 
 , 587 (2004) (concluding defendant was entitled to a no duty to retreat instruction where "[t]he evidence ... [was] legally sufficient to support a conclusion that defendant was attacked by her husband in her own home[.]").
 

 The unqualified no duty to retreat defense is also limited by statute to "[a] lawful occupant
 
 within his or her home, motor vehicle, or workplace
 
 [.]" N.C.G.S. § 14-51.2(f) (emphasis added). "Home" is defined as
 

 [a] building or conveyance of any kind, to include its curtilage, whether the building or conveyance is temporary or
 
 *771
 
 permanent, mobile or immobile, which has a roof over it, including a tent, and is designed as a temporary or permanent residence.
 

 N.C. Gen. Stat. § 14-51.2
 
 (a)(1) (2015).
 
 See also
 

 State v. Rhodes,
 

 151 N.C. App. 208
 
 , 214,
 
 565 S.E.2d 266
 
 , 270 (2002) (quoting
 
 State v. Frizzelle,
 

 243 N.C. 49
 
 , 51,
 
 89 S.E.2d 725
 
 , 726 (1955) ) (noting that "[i]n North Carolina, 'curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings.' "); and see
 
 State v. Williams,
 
 --- N.C. App. ----, ----,
 
 784 S.E.2d 232
 
 , 234 (2016) (concluding that "the term 'property' [as used in statute addressing violations of domestic violence protective orders] is not limited to buildings or other structures affixed to land but also encompasses the land itself.").
 

 We recognize that
 
 N.C. Gen. Stat. § 14-51.3
 
 (a)(1) provides in part that
 

 a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if ... [h]e or she reasonably believes that [deadly] force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
 

 N.C. Gen. Stat. § 14-51.3
 
 (a)(1) (2015). However, to the extent this language can be characterized as extending the no duty to retreat defense to any public place, it is conditioned upon the reasonableness of a person's belief that the use of deadly force was necessary under the circumstances. In other words, the right to stand one's ground in "any public place" is conditioned as an initial matter upon whether the defender was justified in the use of self-defense without regard to the physical setting in which the confrontation occurred. This is consistent with case law predating N.C.G.S. § 14-51.3(a)(1), which the General Assembly enacted in 2011.
 
 See, e.g.,
 

 State v. Beal,
 

 181 N.C. App. 100
 
 , 102,
 
 638 S.E.2d 541
 
 , 543 (2007) (observing that in order to "determine whether the evidence presented supported defendant's proposed instruction that he had no duty to retreat[,] ... [we must] first define the law of self-defense ...[.]"). The statutory presumption of reasonableness remains limited to the use of defensive (including deadly) force in defending one's home, motor vehicle, or workplace.
 
 See
 

 N.C. Gen. Stat. § 14-51.3
 
 (a)(2) (2015) ;
 
 N.C. Gen. Stat. § 14-51.2
 
 (2015).
 

 In the present case, Defendant received a self-defense instruction consistent with the language in N.C.G.S. § 14-51.3(a)(1). The jury was instructed that Defendant
 

 *772
 
 would be excused of first degree murder and second degree murder on the ground of self-defense if, first, [Defendant] believed it was necessary to kill the victim in order to save [Defendant] from death or great bodily harm. Second, [if] the circumstances as they appeared to [Defendant] at the time were sufficient to create such a belief in the mind [of] a person of ordinary firmness.
 

 The statutory reference to "any place [one] has a lawful right to be" does not change our essential analysis regarding Defendant's duty to retreat, since the right to use self-defense is not limited spatially, and the statutory presumption favoring a no duty to retreat instruction remains limited to one's home, motor vehicle, or workplace. Because Defendant was not within his home or premises, motor vehicle, or workplace, any right to "stand his ground" stemmed from the two above-described elements of self-defense, and Defendant received instructions to that effect.
 

 Defendant was not entitled to a presumption that his use of deadly force was reasonable
 
 *687
 
 under the circumstances. There was no evidence that Epps ever entered Defendant's home or yard. It is undisputed that when Defendant shot Epps, Defendant was standing in the intersection of a public street several houses down from his residence, not within his home, motor vehicle, or workplace. Where the evidence is such that a jury could reasonably find a defender was justified in the use of self-defense in any other setting, a no duty to retreat instruction does not change the analysis. Accordingly, even considering the evidence in the light most favorable to Defendant, we are unable to conclude that, if the trial court's instruction on self-defense had included a no duty to retreat instruction, Defendant "probably would not have been convicted of second-degree murder." This argument is overruled.
 

 III. "Aggressor" Jury Instruction
 

 A. Standard of Review
 

 Defendant next challenges the trial court's instruction to the jury that "[Defendant] was not entitled to the benefit of self-defense if ... [Defendant] was the aggressor with the intent to kill or inflict serious bodily injury upon the deceased." Because Defendant failed to raise this objection below, we review for plain error.
 

 B. Analysis
 

 Defendant contends the trial court erroneously instructed the jury that it could find Defendant was the aggressor because, Defendant argues, there was no evidence to support such a finding. Specifically,
 
 *773
 
 Defendant challenges the following portion of the trial court's aggressor instructions:
 

 One enters a fight voluntarily if one uses towards one's opponent abusive language which, considering all of the circumstances, is calculated and intended to provoke a fight. If the defendant voluntarily and without provocation entered a fight the defendant would be considered the aggressor unless the defendant thereafter attempted to abandon the fight and gave notice to the deceased that the defendant was doing so.
 

 In other words, a person who uses defensive force is justified if the person withdraws in good faith from physical contact with the person who was provoked and indicates clearly that he intends to withdraw and terminate the use of force but the person who was provoked continues or resumes the use of force. A person is also justified in using defensive force when the force used by the person who was provoked is so serious that the person using the defensive force reasonably believes that he was in imminent danger of death or serious bodily harm. The person using defensive force had no reasonable means to retreat and the use of force likely caused the-[sic] and the use of force likely to cause death or serious bodily harm was the only way to escape danger.
 

 The defendant is not entitled to the benefit of self-defense if the defendant was the aggressor with the intent to kill or inflict serious bodily injury upon the deceased.
 

 According to Defendant, his actions of "arming [himself] in anticipation of a possible conflict then declining to withdraw from a place [he had] a right to be" (1) were the only possible bases for a finding that he was the aggressor in his confrontation with Epps, and (2) did not constitute "
 
 any
 
 evidence that [Defendant] was the aggressor within the law of self-defense." ((emphasis in original)). We disagree, based on our conclusion that there was other evidence from which a reasonable jury could find Defendant acted as the aggressor.
 
 See
 

 State v. Effler,
 

 207 N.C.App. 91
 
 , 97-98,
 
 698 S.E.2d 547
 
 , 551-52 (2010) (concluding aggressor instruction was not plain error where sufficient evidence was presented for a reasonable jury to conclude defendant was the aggressor).
 

 "Broadly speaking, [a] defendant can be considered the aggressor when [the defendant] 'aggressively and willingly enters into a fight
 
 *774
 
 without legal excuse or provocation.' "
 
 State v. Vaughn,
 

 227 N.C.App. 198
 
 , 202,
 
 742 S.E.2d 276
 
 , 279 (2013) (quoting
 
 State v. Wynn,
 

 278 N.C. 513
 
 , 519,
 
 180 S.E.2d 135
 
 , 139 (1971) ). Here, there was no evidence that, prior to the fatal shootings, Defendant was directly provoked by Epps. At most, Defendant testified, Epps was generally "verbally ... disrespectful." (T p. 595)
 
 See
 

 State v. Mize,
 

 316 N.C. 48
 
 , 54,
 
 340 S.E.2d 439
 
 , 443 (1986) (holding defendant was not entitled to
 
 *688
 
 a jury instruction on self-defense in part because, "although defendant heard indirectly of threats from the victim, the latter had neither assaulted nor threatened [defendant] directly.").
 

 Defendant conceded that when Defendant armed himself with a gun, Epps "wasn't a threat at the time." Defendant voluntarily accompanied Walker down the street to confront Epps. Defendant did not retreat
 
 [3]
 
 despite immediately noticing that Epps had a gun, observing an escalating confrontation between Epps and Walker, and witnessing Epps shoot Walker. Defendant testified he "withdrew" his gun while Epps was still shooting Walker. Defendant also testified that "right after [Epps] shot [Walker], [Epps] looked at me and pointed [his] gun and [then] I shot him." Thus, it was unclear from Defendant's testimony whether Defendant was already aiming his gun at Epps when Epps pointed a gun at Defendant. Further, the State's witness, Quentin Jackson, testified that he observed Defendant "[come] out of nowhere" and shoot Epps while Epps was on the ground and before Epps ever had an opportunity to aim a gun at Defendant.
 
 See
 

 State v. Locklear,
 

 165 N.C.App. 905
 
 ,
 
 602 S.E.2d 728
 
 ,
 
 2004 WL 1824322
 
 at *3 (2004) (unpublished) (noting that "[i]t is a well established [sic] rule in this State that a jury is the sole judge of a witness' credibility, and it may believe some, all, or none of what a witness says.").
 

 "When there is conflicting evidence as to which party was the aggressor, the jury, as the finders of fact, are [sic] entitled to determine which of the parties, if either, is the aggressor."
 
 State v. Norris,
 

 239 N.C.App. 132
 
 ,
 
 768 S.E.2d 650
 
 ,
 
 2015 WL 67197
 
 at *3 (2015) (unpublished) (citing
 
 State v. Cannon,
 

 341 N.C. 79
 
 , 82-83,
 
 459 S.E.2d 238
 
 , 241 (1995) );
 
 see also
 

 State v. Brewer,
 

 328 N.C. 515
 
 , 522,
 
 402 S.E.2d 380
 
 , 385 (1991) (noting that "[c]ontradictions in the evidence are for the jury to decide.").
 

 In cases cited by Defendant, " '[t]here [was] no conflict in evidence as to which of the parties was the aggressor. [The d]efendant did not
 
 *775
 
 start the fight.' "
 
 Vaughn,
 

 227 N.C.App. at 202
 
 ,
 
 742 S.E.2d at 279
 
 (quoting
 
 State v. Tann,
 

 57 N.C.App. 527
 
 , 530,
 
 291 S.E.2d 824
 
 , 827 (1982) (alterations in original)).
 
 See also
 

 State v. Temples,
 

 74 N.C.App. 106
 
 , 109,
 
 327 S.E.2d 266
 
 , 268 (1985) ;
 
 State v. Ward,
 

 26 N.C.App. 159
 
 , 163,
 
 215 S.E.2d 394
 
 , 396-97 (1975). In the present case, by contrast, there was conflicting evidence about the sequence of events culminating in Epps's death, and the extent of Defendant's role in precipitating the shooting. Accordingly, the trial court's aggressor instructions were not plain error.
 

 IV. Jury Instruction on Lawful Defense of a Third Person
 

 A. Standard of Review
 

 Defendant next contends the trial court erred by omitting a jury instruction on lawful defense of another. Because Defendant failed to request such a jury instruction, we review for plain error.
 

 B. Analysis
 

 In general one may kill in defense of another if one [reasonably] believes it to be necessary to prevent death or great bodily harm to the other ... to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the killing.
 

 State v. Perry,
 

 338 N.C. 457
 
 , 466,
 
 450 S.E.2d 471
 
 , 476 (1994) (quoting
 
 State v. Terry,
 

 337 N.C. 615
 
 , 623,
 
 447 S.E.2d 720
 
 , 724 (1994) ). However,
 

 [i]f there is no evidence from which a jury reasonably could find that the defendant in fact believed that it was necessary to kill to protect another from death or great bodily harm, the defendant is not entitled to have the jury instructed on either perfect or imperfect defense of another.
 

 Id.,
 

 338 N.C. at 467
 
 ,
 
 450 S.E.2d at
 
 477 ;
 
 see also
 

 State v. McKoy,
 

 332 N.C. 639
 
 , 644,
 
 422 S.E.2d 713
 
 , 716 (1992) (stating that "[i]n order to have either perfect or imperfect self-defense, the evidence must show that it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself or another from death or great
 
 *689
 
 bodily harm. It must also appear that the defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.").
 

 Defendant's testimony and other custodial statements established that Epps was no longer shooting at Walker when Defendant shot Epps, and Walker was already fatally wounded. Defendant testified that
 
 *776
 
 "[a]s soon as [Epps] got done shooting Walker[,] [Epps] looked at me and he drew his gun and I shot him." Defendant later told police he "was scared, and [Epps] pointed that gun [at me]. He had already shot my cousin, and then he was trying to shoot me." Defendant also said he "didn't have a clear shot" until Epps "fired at [Walker] one last time" and Walker "snatched away." In telephone conversations from jail, Defendant indicated he shot Epps in his own defense, not to protect Walker from death or great bodily harm, and "to make sure [Epps] couldn't shoot [any]body else." Notwithstanding Defendant's contention that he "drew" his gun while Epps was still shooting Walker, Defendant's claim that he shot Epps in Walker's defense fails as a matter of law because when Defendant actually shot Epps, Defendant was aware that the threat of harm to Walker had concluded.
 

 The cases Defendant cites, in which defendants were entitled to defense of another instructions, are unavailing. In each of those cases, the defendant committed the defensive act(s) when the perceived harm to another was either imminent or in progress.
 
 See, e.g.,
 

 State v. Moore,
 

 363 N.C. 793
 
 , 797-98,
 
 688 S.E.2d 447
 
 , 450 (2010) ;
 
 State v. Jones,
 

 299 N.C. 103
 
 , 105-06,
 
 261 S.E.2d 1
 
 , 4 (1980) ;
 
 State v. Hornbuckle,
 

 265 N.C. 312
 
 , 313-14,
 
 144 S.E.2d 12
 
 , 13 (1965) ;
 
 State v. Clark,
 

 134 N.C. 698
 
 ,
 
 47 S.E. 36
 
 , 37 (1904),
 
 overruled on other grounds by
 

 State v. Phillips,
 

 264 N.C. 508
 
 ,
 
 142 S.E.2d 337
 
 (1965) ;
 
 State v. Patterson,
 

 50 N.C.App. 280
 
 , 282-83,
 
 272 S.E.2d 924
 
 , 925-26 (1981) ;
 
 State v. Graves,
 

 18 N.C.App. 177
 
 , 178-80,
 
 196 S.E.2d 582
 
 , 583-85 (1973).
 
 See also
 

 State v. Norman,
 

 324 N.C. 253
 
 , 261,
 
 378 S.E.2d 8
 
 , 13 (1989) (observing that our Supreme Court "ha[s] sometimes used the phrase 'about to suffer' interchangeably with 'imminent' to describe the immediacy of the threat that is required to justify killing in self-defense." (citing
 
 State v. Holland,
 

 193 N.C. 713
 
 , 718,
 
 138 S.E. 8
 
 , 10 (1927) )).
 

 Further, evidence that "[e]verybody [was] running, ducking and screaming and scared" (Def. br. at 28) did not entitle Defendant to an instruction on defense of another (or others).
 
 See
 

 State v. Ramseur,
 

 226 N.C.App. 363
 
 , 376,
 
 739 S.E.2d 599
 
 , 607-08 (2013) (concluding evidence that a group of individuals had been "afraid" and subjected to verbal threats by the deceased was insufficient to "support a reasonable belief by [the] [d]efendant that ... the people ... were in
 
 imminent
 
 danger of death or great bodily harm unless [the] [d]efendant fired on [the deceased]." (emphasis in original)).
 

 In sum, the evidence failed to demonstrate that Defendant shot Epps "to prevent death or great bodily harm" to Walker, and did not support a reasonable belief by Defendant that it was necessary to shoot Epps to
 
 *777
 
 prevent imminent death or harm to others. Accordingly, Defendant was not prejudiced by the omission of a jury instruction on defense of others.
 

 V. Exclusion of Witness Testimony
 

 Defendant next argues the trial court erroneously excluded a statement made on the witness stand by Defendant's uncle, Charles Bowser ("Bowser").
 

 A. Standard of Review
 

 Our Supreme Court has held that
 

 [i]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record.... [Additionally,] the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred.
 

 State v. Jacobs,
 

 363 N.C. 815
 
 , 818,
 
 689 S.E.2d 859
 
 , 861 (2010) (quoting
 
 State v. Raines,
 

 362 N.C. 1
 
 , 20,
 
 653 S.E.2d 126
 
 , 138 (2007) ).
 

 When Bowser was asked to recount Epps's and Walker's second confrontation
 
 *690
 
 on the night they were killed, Bowser testified he overheard Defendant say to Epps and Walker, "[W]ell, why can't you-all just get along?" The State's objection to this statement was sustained. Defense counsel made no attempt to establish the significance or admissibility of the excluded statement, "or request that the witness be allowed to answer outside the presence of the jury."
 
 [4]
 

 Id.,
 

 363 N.C. at 819,
 
 689 S.E.2d at 862
 
 . Thus, Defendant failed to preserve this argument for appellate review.
 
 See, e.g.,
 

 Raines,
 

 362 N.C. at 20
 
 ,
 
 653 S.E.2d at 138
 
 (concluding exclusion of evidence was not preserved for appellate review where "the trial court sustained the prosecution's objection [and] [d]efense counsel then proceeded to other questions without making an offer of proof or requesting that the witness be allowed to answer outside the presence of the jury."); N.C. R.App. P. 10(a)(1) (2015) (providing that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if ... not
 
 *778
 
 apparent from the context."). Further, even if reviewable, " 'the failure of a trial court to admit or exclude ... evidence will not result in the granting of a new trial absent a showing by defendant that a reasonable possibility exists that a different result would have been reached absent the error.' "
 
 State v. Hernandez,
 

 202 N.C.App. 359
 
 , 363,
 
 688 S.E.2d 522
 
 , 525 (2010) (quoting
 
 State v. Weeks,
 

 322 N.C. 152
 
 , 170,
 
 367 S.E.2d 895
 
 , 906 (1988) ).
 

 B. Analysis
 

 Defendant contends the excluded testimony was "the only evidence of the actual words spoken by [Defendant] that night [of the shootings]" and showed Defendant was "trying to calm the hostilities, not [acting as] an aggressor." Excluding Bowser's statement, Defendant argues, was prejudicial because it permitted the jury "to convict [him] on the theory that he was the aggressor[.]" We disagree.
 

 As discussed in Section III, there was independent evidence upon which the jury could have based a finding that Defendant acted as an aggressor in the moments before shooting Epps.
 
 See, e.g.,
 

 State v. Cook,
 
 ---N.C.App. ----, ----,
 
 782 S.E.2d 569
 
 , 579 (2016) (citing N.C. Gen.Stat. § 15A-1443(a) (2013) ) (finding defendant failed to show prejudicial error from admission of alleged hearsay, where "the State proffered overwhelming evidence supporting defendant's conviction[.]");
 
 State v. Bass,
 

 190 N.C.App. 339
 
 , 348,
 
 660 S.E.2d 123
 
 , 129 (2008) (concluding admission of alleged hearsay did not prejudice defendant where other witness testimony established the fact for which it was offered). Additionally, Defendant testified on his own behalf and was permitted to describe to the jury his efforts to "calm the hostilities" between Walker and Epps, including that Defendant "tried to eradicate the verbal disagreement ... [between them]." Defendant has not demonstrated he was prejudiced by the exclusion of Bowser's testimony.
 

 VI. Length of Jury Deliberations
 

 A. Standard of Review
 

 Defendant next argues the trial court committed plain error by requiring the jury to deliberate for an unreasonable length of time in violation of N.C. Gen.Stat. § 15A-1235(c), which sets forth procedures a trial court may follow at its discretion in the event of jury deadlock. Our Supreme Court has explicitly characterized N.C.G.S. § 15A-1235(c) as "permissive" rather than mandatory,
 
 see
 

 State v. May,
 

 368 N.C. 112
 
 , 119,
 
 772 S.E.2d 458
 
 , 463 (2015), and held that "when a trial court is alleged to have violated a permissive statute, we review for plain error if the issue
 
 *779
 
 has not been preserved."
 

 Id.
 

 (citing
 
 State v. Aikens,
 

 342 N.C. 567
 
 , 577-78,
 
 467 S.E.2d 99
 
 , 106 (1996) ). Defendant did not object to the trial court's jury instructions, comments to the jury, or the length of jury deliberations. This argument was therefore not properly preserved.
 
 See
 
 N.C.R.App. P. 10(b)(1) (2015). Accordingly, our review is limited to plain error.
 
 *691
 
 We further note that "plain error analysis applies only to jury instructions and evidentiary matters[.]"
 
 State v. Wiley,
 

 355 N.C. 592
 
 , 615,
 
 565 S.E.2d 22
 
 , 39-40 (2002),
 
 cert. denied,
 

 537 U.S. 1117
 
 ,
 
 123 S.Ct. 882
 
 ,
 
 154 L.Ed.2d 795
 
 (2003). Thus, we consider whether Defendant's argument in fact challenges "jury instructions" given by the trial court. We conclude it does not.
 

 B. Analysis
 

 Jury deliberations in this case began at approximately 2:15 p.m. on 11 July 2015. At 4:00 p.m., the jury sent a note requesting printed copies of the instructions on the possible verdicts and asking to view an exhibit. Deliberations resumed at 4:08 p.m. Shortly before 7:00 p.m., the trial court returned the jury to the courtroom, expressing concern that the jurors "ha[d] been working very, very hard and ha[d] not taken a break." The jury, with defense counsel's consent, was told it could either "take a dinner recess," or "continue deliberating ... [and] have dinner brought in." The jurors chose the latter.
 

 At 7:33 p.m., the jury sent a note requesting to see another exhibit. At 8:43 p.m., the jury sent a note indicating it was deadlocked. At 8:50 p.m., again with defense counsel's consent, the trial court exercised its discretion to give the jury instruction set forth in N.C. Gen.Stat. § 15A-1235(b)
 
 [5]
 
 (often referred to as an
 
 Allen
 
 instruction,
 
 see
 

 Allen v. United States,
 

 164 U.S. 492
 
 ,
 
 17 S.Ct. 154
 
 ,
 
 41 L.Ed. 528
 
 (1896) ).
 
 See
 

 State v. Streeter,
 

 191 N.C.App. 496
 
 , 505,
 
 663 S.E.2d 879
 
 , 885 (2008) (citing
 
 *780
 

 State v. Adams,
 

 85 N.C.App. 200
 
 , 210,
 
 354 S.E.2d 338
 
 , 344 (1987) ) (noting that "[t]he decision to give an
 
 Allen
 
 instruction is within the sound discretion of the trial court."). Defendant does not challenge the trial court's
 
 Allen
 
 instruction.
 

 At the conclusion of the
 
 Allen
 
 instruction, the trial court directed the jury to "resume [its] deliberations and continue [its] efforts to reach a verdict." At 10:50 p.m., the trial court returned the jury to the courtroom and requested an update on the deliberations. The following exchange ensued:
 

 COURT: Have you-all gotten any closer to reaching a unanimous verdict? Without saying what the numbers are?
 

 FOREMAN: We're getting there, Your Honor, a lot closer than the first time.
 

 COURT: At this time do you believe there is a reasonable possibility that you all will reach a unanimous verdict?
 

 FOREMAN: It will take a little time but I think it's possible.
 

 COURT: Thank you.... Again I gave you those [
 
 Allen
 
 ] instructions earlier, keep working at it.
 

 [ ... ]
 

 COURT: What says the State after hearing the response of the jury foreperson?
 

 STATE: Let them continue to deliberate, Your Honor.
 

 COURT: What says the defendant?
 

 DEFENSE: Same, thank you, Your Honor.
 

 The jury resumed its deliberations and returned to the courtroom with a verdict at 11:34 p.m.
 

 Defendant now contends that by "requiring the jury to deliberate until almost midnight on a Saturday with no end in sight and no prospect of an evening recess[,]" the trial court violated N.C. Gen.Stat. § 15A-1235(c), which provides,
 

 [i]f it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions
 
 *692
 
 provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
 

 *781
 
 N.C. Gen.Stat. § 15A-1235(c) (2015).
 
 [6]
 
 According to Defendant, this subsection (which Defendant mischaracterizes as a "statutory mandate,"
 
 see
 

 May,
 

 368 N.C. at 119
 
 ,
 
 772 S.E.2d at
 
 463 ), "required ... [the trial court] to declare a recess well before midnight ... and have the jurors continue their deliberations Monday morning during regular business hours." Beyond this general contention, Defendant does not identify specific comments by the trial court that he interprets as "requir[ing] or threaten[ing] to require the jury to deliberate for an unreasonable length of time."
 

 As noted above, plain error analysis applies only to unpreserved arguments involving jury instructions or evidentiary issues. In the present case, the trial court gave
 
 no
 
 further instructions after the
 
 Allen
 
 instruction, read to the jury with defense counsel's express consent at 8:50 p.m. That instruction, which was given virtually verbatim in accordance with N.C.G.S. § 15A-1235(b), is not challenged on appeal. The trial court concluded its
 
 Allen
 
 instruction by directing the jury to "resume [its] deliberations and continue [its] efforts to reach a verdict."
 

 A trial court's decision to order further jury deliberations is not a "jury instruction;" rather, it is a discretionary ruling permitted by N.C.G.S. § 15A-1235(c).
 
 See
 

 State v. Ross,
 

 207 N.C.App. 379
 
 , 387-88,
 
 700 S.E.2d 412
 
 , 418 (2010). In the present case, when the trial court requested an update from the jury at 10:50 p.m., the court gave no new instructions and did not repeat the
 
 Allen
 
 instruction. It merely asked whether there appeared to be "a reasonable possibility" that the jury would reach a verdict.
 
 See, e.g.,
 

 Streeter,
 

 191 N.C.App. at 504
 
 ,
 
 663 S.E.2d at 885
 
 (finding trial court's inquiry into status of jury deliberations did not "coerce or intimidate the jury into reaching a verdict[,]" where court "did not ask whether the split [vote] was for conviction or acquittal ... [and] was not impatient towards the jury nor did it indicate that it would hold the jury until a verdict was reached."). The trial judge then acted within his statutory discretion to "require the jury to continue its deliberations," based on the foreman's assurances that the jury was making progress toward a unanimous verdict. Arguably, N.C.G.S. § 15A-1235(c) was not even implicated at this point in the proceedings, because it no longer
 
 *782
 
 "appear[ed] ... that the jury [was] unable to agree."
 
 See
 

 State v. Smith,
 

 188 N.C.App. 207
 
 , 217,
 
 654 S.E.2d 730
 
 , 738 (2008) (concluding N.C.G.S. § 15A-1235(c) was inapplicable because jury was not deadlocked when, "[o]n more than one occasion, the [trial] court asked the jury foreman whether the jury was making progress towards a verdict [and] [e]ach time he was asked, the foreman indicated that the jury was making progress."). Defendant has failed to identify an "instruction" by the trial court that "require[d] or threaten[ed] to require the jury to deliberate for an unreasonable length of time," a prerequisite for plain error review of this argument.
 
 See
 

 Ross,
 

 207 N.C.App. at 387-88
 
 ,
 
 700 S.E.2d at 418
 
 .
 

 Even assuming
 
 arguendo
 
 that plain error review is appropriate, Defendant has not shown he was prejudiced by the trial court's instructions or comments to the jury regarding its deliberations. This Court has suggested that a trial court "require[s] or threaten[s] to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals" if, "[under the totality of] the circumstances surrounding jury deliberations[,] [the trial court's actions] might reasonably be construed by ... the jury ... as coercive."
 
 State v. Dexter,
 

 151 N.C.App. 430
 
 , 433,
 
 566 S.E.2d 493
 
 , 496 (2002) (citation and internal quotation marks omitted). A trial court's decisions regarding the
 
 *693
 
 length of jury deliberations are coercive if they
 

 suggest[ ] to [a member of the jury] that he should surrender his well-founded convictions conscientiously held or his own free will and judgment in deference to the views of the majority and concur in what is really a majority verdict rather than a unanimous verdict.
 

 State v. Roberts,
 

 270 N.C. 449
 
 , 451,
 
 154 S.E.2d 536
 
 , 538 (1967).
 
 See also
 

 May,
 

 368 N.C. at 119
 
 ,
 
 772 S.E.2d at 463
 
 (quoting
 
 State v. Patterson,
 

 332 N.C. 409
 
 , 416,
 
 420 S.E.2d 98
 
 , 101 (1992) ) (holding that "as part of our plain error analysis, in determining whether a trial court's instructions led to a coerced jury verdict ... 'we must analyze the trial court's actions in light of the totality of the circumstances facing the trial court at the time it acted.' ");
 
 State v. Peek,
 

 313 N.C. 266
 
 , 271,
 
 328 S.E.2d 249
 
 , 253 (1985) (holding that "in deciding whether a court's instructions force a verdict or merely serve as a catalyst for further deliberations, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury.").
 

 Considering the record as a whole, we find no suggestion that permitting the jury to continue deliberations, without editorialization by the trial court, when a unanimous verdict appeared imminent, "tilted
 
 *783
 
 the scales and [coerced] the jury to reach its verdict convicting [Defendant]."
 
 See
 

 State v. Walker,
 

 316 N.C. 33
 
 , 39,
 
 340 S.E.2d 80
 
 , 83 (1986) (internal quotation marks and citation omitted). The trial court gave a proper and complete
 
 Allen
 
 instruction after being informed the jury was deadlocked and, without further comment, asked the jury to resume deliberations. In its final colloquy with the jury, the trial court explicitly avoided inquiring into the jury's numerical split. Moreover, "the trial court did not communicate with less than all of the jurors ... [or] rush[ ] the jury to reach a verdict[.]"
 
 Summey,
 
 228 N.C.App. at 742, 746 S.E.2d at 411-12. It did not "convey[ ] the impression that it was irritated with the jury for not reaching a verdict, ... [or] intimate[ ] that it would hold the jury until it reached a verdict [.]"
 
 State v. Nobles,
 

 350 N.C. 483
 
 , 510,
 
 515 S.E.2d 885
 
 , 901-02 (1999).
 
 See also
 

 Smith,
 

 188 N.C.App. at 218
 
 ,
 
 654 S.E.2d at 738
 
 (holding trial court's instructions were not coercive where "[a]t no time did the trial court inform the jurors that they would not be able to go home until they reached a unanimous verdict or that they would remain together until they reconciled their differences.");
 
 State v. Rasmussen,
 

 158 N.C.App. 544
 
 , 560-61,
 
 582 S.E.2d 44
 
 , 56 (2003) (finding no coercion notwithstanding "(1) the trial court's statement to the jury that it wanted 'to get the case done if we can do it today[ ]'; [and] (2) the fact that the jury was asked to deliberate after normal hours on a Friday evening."). Contrary to Defendant's contention that the trial court required the jury to deliberate "with no end in sight and no prospect of an evening recess," the trial court's comments to the jury at 10:50 p.m. reflected an attempt to ascertain whether continuing deliberations would be futile.
 

 In
 
 State v. Williams,
 

 315 N.C. 310
 
 ,
 
 338 S.E.2d 75
 
 (1986), our Supreme Court found a trial court did not coerce a verdict, despite inquiring into the jury's numerical division and giving an incomplete
 
 Allen
 
 instruction, where
 

 [t]he jury was not required to deliberate for an inordinate amount of time, and at no point did the jurors indicate that they were hopelessly deadlocked. The trial judge also granted the jury's requests to review exhibits introduced at trial. The record also reveals that the trial judge was polite, considerate, and accommodating toward the jury.
 

 Id.,
 

 315 N.C. at 329,
 
 338 S.E.2d at 86
 
 . In the present case, as in
 
 Williams,
 
 Defendant "has failed to point to any statement, act, or omission by the [trial] court which could remotely be interpreted as coercive."
 

 Id.,
 

 315 N.C. at 329,
 
 338 S.E.2d at 86-87
 
 . This argument is overruled.
 

 *784
 
 VII. Consideration of Mitigating Factors at Sentencing
 

 A. Standard of Review
 

 Defendant lastly contends the trial court erroneously failed to consider "mitigating factors present in the offense" at
 
 *694
 
 Defendant's sentencing. "The standard of review for application of mitigating factors is an abuse of discretion."
 
 State v. Hagans,
 

 177 N.C.App. 17
 
 , 31,
 
 628 S.E.2d 776
 
 , 785 (2006) (citing
 
 State v. Butler,
 

 341 N.C. 686
 
 , 694-95,
 
 462 S.E.2d 485
 
 , 489-90 (1995) ).
 
 See also
 

 State v. Garnett,
 

 209 N.C.App. 537
 
 , 549,
 
 706 S.E.2d 280
 
 , 288 (2011) (quoting
 
 State v. Rogers,
 

 157 N.C.App. 127
 
 , 129,
 
 577 S.E.2d 666
 
 , 668 (2003) ) (stating that " '[a] trial court's weighing of mitigating and aggravating factors will not be disturbed on appeal absent a showing that there was an abuse of discretion.' "). "Abuse of discretion results where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Thomsen,
 
 --- N.C. ----, ----,
 
 776 S.E.2d 41
 
 , 48 (2015) (quoting
 
 State v. Rollins,
 

 224 N.C.App. 197
 
 , 199,
 
 734 S.E.2d 634
 
 , 635 (2012) ).
 

 In North Carolina, " '[a] trial judge is given wide latitude in determining the existence of mitigating factors, and the trial court's failure to find a mitigating factor is error only when no other reasonable inferences can be drawn from the evidence.' "
 
 State v. Bacon,
 

 228 N.C.App. 432
 
 , 436,
 
 745 S.E.2d 905
 
 , 908-09 (2013) (quoting
 
 State v. Mabry,
 

 217 N.C.App. 465
 
 , 471,
 
 720 S.E.2d 697
 
 , 702 (2011) ). On appeal, a trial court may be reversed for failure to find a mitigating factor "only when the evidence offered in support of that factor 'is both uncontradicted and manifestly credible.' "
 
 Mabry,
 

 217 N.C.App. at 471
 
 ,
 
 720 S.E.2d at 702
 
 (quoting
 
 State v. Jones,
 

 309 N.C. 214
 
 , 220,
 
 306 S.E.2d 451
 
 , 456 (1983) ).
 

 B. Analysis
 

 The trial court sentenced Defendant within the presumptive range for a Class B1 felony, prior record level I.
 
 See
 
 N.C. Gen.Stat. §§ 15A-1340.17(c)(2), (e) (2015). It is well-established that a trial court is not required to make findings of mitigation or aggravation if, in its discretion, it does not depart from the presumptive sentencing range, "even if evidence of mitigating factors is presented at sentencing."
 
 State v. Kelly,
 

 221 N.C.App. 643
 
 , 648,
 
 727 S.E.2d 912
 
 , 915 (2012) (citing
 
 Hagans,
 

 177 N.C.App. at 31
 
 ,
 
 628 S.E.2d at 785-86
 
 (2006) );
 
 see also
 

 State v. Norris,
 

 360 N.C. 507
 
 , 512,
 
 630 S.E.2d 915
 
 , 918 (2006) (holding that "the trial court is free to choose a sentence from anywhere in the presumptive range without findings other than those in the jury's verdict."); N.C. Gen.Stat. § 15A-1340.16(a) (2015) (providing in part that "[t]he court
 
 *785
 
 shall consider evidence of aggravating or mitigating factors present in the offense that make aggravated or mitigated sentences appropriate, but the decision to depart from the presumptive range is in the discretion of the court."); N.C. Gen.Stat. § 15A-1340.16(c) (2015) (providing in part that "[t]he court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences specified in G.S. 15A-1340.17(c)(2)."). Accordingly, because the trial court did not depart from the presumptive range in sentencing Defendant, it was not required to make any findings regarding mitigation.
 
 See
 

 State v. Caldwell,
 

 125 N.C.App. 161
 
 , 162-63,
 
 479 S.E.2d 282
 
 , 283 (1997) (concluding that "[our] Legislature [clearly] intended to provide the trial court with a window of discretion to be exercised when sentencing a criminal defendant within the presumptive range. It is not the province of this Court to impose the additional requirement that the trial court justify its decision by making findings of aggravation and mitigation subject to appellate review.").
 

 Defendant argues that, even if not required to make findings, the trial court erroneously failed to "consider" evidence of mitigating factors that were "proved by the State's own evidence." (Def. br. at 36) This argument is without merit. A sentence that falls within the presumptive range but is imposed "without comment ... does not mean the trial court failed to consider the mitigating factors presented."
 
 Hagans,
 
 177 N.C.App. at 31,
 
 628 S.E.2d at 786
 
 .
 
 See also
 

 State v. Chavis,
 

 141 N.C.App. 553
 
 , 568,
 
 540 S.E.2d 404
 
 , 415 (2000) (concluding that, "[a]s
 
 *695
 
 the trial court imposed the presumptive sentence ..., it was not required to take into account any evidence offered in mitigation.").
 

 We note that, at sentencing, Defendant did not assert the specific statutory factors he now argues the trial court erroneously failed to consider.
 
 [7]
 
 Where a defendant
 

 fails to request that a trial court find a factor in mitigation, the trial court has a duty to find the factor only when the evidence offered at the sentencing hearing supports the existence of a [statutory] mitigating factor ... [and] defendant [proves] by a preponderance of the evidence that the evidence so clearly establishes the fact in issue
 
 *786
 
 that no reasonable inferences to the contrary can be drawn, and that the credibility of the evidence is manifest as a matter of law.
 

 See
 

 State v. Davis,
 

 206 N.C.App. 545
 
 , 549,
 
 696 S.E.2d 917
 
 , 920 (2010) (internal quotation marks and citations omitted). During Defendant's sentencing hearing, in requesting a sentence at the lowest end of the mitigated range, defense counsel told the trial court only that Defendant had committed "an unintentional act." Our Supreme Court has held that, absent a stipulation by the State, "statements made by defense counsel during argument at the sentencing hearing do not constitute evidence which would support a finding of [either] nonstatutory [or statutory] mitigating factors."
 
 State v. Swimm,
 

 316 N.C. 24
 
 , 32,
 
 340 S.E.2d 65
 
 , 71 (1986).
 

 Defendant addressed the trial court prior to sentencing, reasserting his claim of self-defense and expressing remorse for the "tragic situation." Even if this could be characterized as evidence of mitigating factors, the trial court acted "squarely [with]in its discretion ... by sentencing Defendant in the presumptive range after considering Defendant's evidence of mitigating factors."
 
 Garnett,
 

 209 N.C.App. at 550
 
 ,
 
 706 S.E.2d at 288
 
 .
 

 VIII. Conclusion
 

 For the reasons stated in this opinion, we find Defendant's trial was free from error.
 

 NO ERROR.
 

 Judges HUNTER, JR., and DILLON concur.
 

 [1]
 

 N.C.P.I.-Crim. 206.10 (2014) is the pattern instruction for "First degree murder where a deadly weapon is used, covering all lesser included homicide offenses and self-defense."
 

 [2]
 

 We note that a previous version of the footnote read, "
 
 Where the evidence raises the issue of retreat,
 
 see alternative paragraph set forth in N.C.P.I.-Crim. 308.10." (emphasis added).
 
 See
 

 Morgan,
 

 315 N.C. at 643
 
 , 340 S.E.2d at 94-95.
 

 [3]
 

 As discussed in Part II of this opinion, Defendant was not entitled to a no duty to retreat instruction, because he was not within his home or curtilage when he fatally shot Epps.
 

 [4]
 

 By contrast, when the State objected to a similar line of questioning during the direct examination of defense witness Michael Gregory, defense counsel did request a voir dire hearing outside the presence of the jury.
 

 [5]
 

 N.C. Gen.Stat. § 15A-1235(b) (2015) provides that "[b]efore the jury retires for deliberation, the judge may give an instruction which informs the jury that:
 

 (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
 

 (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
 

 (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
 

 (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
 

 [6]
 

 "N.C.G.S. § 15A-1235(c) does not require an affirmative indication from the jury that it is having difficulty reaching a verdict, nor does it require that the jury deliberate for a lengthy period of time before the trial court may give the
 
 Allen
 
 instruction."
 
 State v. Boston,
 

 191 N.C.App. 637
 
 , 643,
 
 663 S.E.2d 886
 
 , 891 (2008). Additionally, the trial court is not required to repeat the instruction every time a jury indicates it is deadlocked.
 
 See
 

 State v. Summey,
 

 228 N.C.App. 730
 
 , 740-41,
 
 746 S.E.2d 403
 
 , 410-11 (2013).
 

 [7]
 

 Specifically, Defendant cites N.C. Gen.Stat. § 15A-1340.16(e)(1) (2015) ("The defendant committed the offense under ... threat ... [that] significantly reduced the defendant's culpability.") and N.C. Gen.Stat. § 15A-1340.16(e)(8) (2015) ("The defendant acted under strong provocation....").