BRYANT, Judge, dissenting.
*771 Because In re Civil Penalty , 324 N.C. 373, 379 S.E.2d 30 (1989), requires that we follow State v. Lee , --- N.C.App. ----, 789 S.E.2d 679 (2016), review allowed , --- N.C. ----, 796 S.E.2d 790 (2017), I believe that we are foreclosed from finding error in (I) the trial court's denial of defendant's request for a no duty to retreat instruction. While, candidly, I tend to agree with the majority's opinion that a new trial is necessary, I see no way in which to distinguish the facts in the instant case from those in Lee and, therefore, disagree with the majority's reasoning that Lee "is not precedent here," whether we agree with Lee 's legal soundness or not. See Petition for Discretionary Review at 6, State v. Lee , --- N.C. ----, 796 S.E.2d 790 (2017) ("The opinion below is the first to construe N.C. Gen. Stat. § 14-51.3 ('Use of force in defense of person'), but it violates basic rules of statutory construction, and relies heavily upon completely inapplicable provisions of § 14-51.2 ('Home, workplace, and motor vehicle protection'), which were not cited or argued by either party. All branches of defensive force jurisprudence will be affected by this flawed Court of Appeals opinion....").
*488 Furthermore, where (II) the trial court sustained the State's objections to evidence of specific instances of the victim's violent conduct, but allowed ample evidence of the victim's reputation for violence, and where (III) the trial court's denial of defendant's motion to continue does not rise to the level of a constitutional violation of defendant's right to present a defense, I would find no error in the judgment of the trial court and respectfully dissent.
I
Defendant first argues the trial court erred by denying defendant's request for a pattern jury instruction that defendant could "stand his ground" and had no duty to retreat before using deadly force in self-defense in a place defendant had a lawful right to be. While the statute upon which defendant relies- N.C. Gen. Stat. 14-51.3 (2015)-states that "a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be," I believe that we are bound by this Court's analysis in State v. Lee and its holding that "the statutory presumption favoring a no duty to retreat instruction remains limited to one's home, motor vehicle, or workplace." --- N.C.App. at ----, 789 S.E.2d at 686.
The question of whether a trial court erred in instructing the jury is a question of law reviewed de novo .
*772 State v. Osorio , 196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009). "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." State v. Shaw , 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988) (citation omitted).
"Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence." State v. Whetstone , 212 N.C.App. 551, 555, 711 S.E.2d 778, 781 (2011) (citation omitted). Further, "where supported by the evidence in a claim of self-defense, an instruction negating [a] defendant's duty to retreat in his home or premises must be given even in the absence of a request by [the] defendant." State v. Morgan , 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (citations omitted); see also State v. Davis , 177 N.C.App. 98, 102, 627 S.E.2d 474, 477 (2006) (noting that "[a] comprehensive self-defense instruction requires instructions that a defendant is under no duty to retreat if the facts warrant it"). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to [the] defendant." State v. Withers , 179 N.C.App. 249, 257, 633 S.E.2d 863, 868 (2006) (alteration in original) (quoting State v. Mash , 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) ).
"Our courts have recognized that a defendant may use either deadly force or nondeadly force to defend himself, depending on the circumstances of each case." Whetstone , 212 N.C.App. at 558, 711 S.E.2d at 783 (citation omitted). Where an assault is made without the use of deadly force, "the person assaulted may not stand his ground and kill his adversary, if there is any way of escape open to him, although he is permitted to repel force by force and give blow for blow." State v. Pearson , 288 N.C. 34, 39, 215 S.E.2d 598, 602-03 (1975) (citations omitted).
"[H]owever, where the attack is made with murderous intent (i.e., deadly force), the person attacked is under no obligation to retreat, but may stand his ground and kill his adversary, if need be." Id. at 39-40, 215 S.E.2d at 603 (citation omitted). An assault is deadly or "felonious" if "it is done with the intent to kill or at least to inflict serious bodily injuries...." State v. Frizzelle , 243 N.C. 49, 50, 89 S.E.2d 725, 726 (1955). Thus, "deadly force is not privileged against nondeadly force" unless "there is a great disparity in strength between the defendant and his assailant...." Pearson , 288 N.C. at 40, 215 S.E.2d at 603 (citations omitted). These common law principles have been codified as follows:
*773 [A] person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
(1) He or she reasonably believes that such force is necessary to prevent imminent *489 death or great bodily harm to himself or herself or another.
(2) Under the circumstances permitted pursuant to G.S. 14-51.2.
N.C.G.S. § 14-51.3(a) (emphasis added). Additionally, "[a] lawful occupant within his or her home, motor vehicle, or workplace does not have a duty to retreat...." N.C. Gen. Stat. § 14-51.2(f) (2015). It is important to note, however, that when confronted with an intruder, "[the] lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm ... when using defensive force...." Id. § 14-51.2(b)(1)-(2). "[T]he determination by the trial court of which jury instruction is appropriate depends on the evidence in each case." Whetstone , 212 N.C.App. at 558, 711 S.E.2d at 783.
Although this Court reviewed the defendant's arguments for plain error in State v. Lee , --- N.C.App. at ----, 789 S.E.2d at 684, I believe that its analysis of whether a no duty to retreat instruction was required controls our analysis in this case. See generally In re Civil Penalty , 324 N.C. at 384, 379 S.E.2d at 37 ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent unless it has been overturned by a higher court." (citations omitted)).
In Lee , the defendant's friend (Walker) and the victim (Epps) engaged in an argument near the defendant's home. --- N.C.App. at ----, 789 S.E.2d at 682. Epps, who had a reputation as a troublemaker, left, but promised to return later and in fact did, see Petition for Discretionary Review at 2, arriving in a car which parked two or three houses down from the defendant's home, id. at ----, 789 S.E.2d at 683. Epps and several others got out of the car and approached the defendant and Walker, who had seen Epps arrive in the car and had come out of the defendant's house. Id. Following a second argument, which quickly escalated, Epps shot Walker in the street outside the defendant's home and continued to shoot at him as Walker attempted to flee. Id. Then, Epps turned his gun on the defendant, at which point the defendant shot Epps several times before Epps could fire. Id. Both Epps and Walker died as a result of gunshot wounds. Id.
*774 The defendant in Lee was indicted for first-degree murder and was found guilty of second-degree murder. Id. Although the defendant did not object at trial to the self-defense jury instructions as given by the trial court, on appeal, the defendant argued that a no duty to retreat instruction should have been given as he "was where he had a right to be-the street by his home-when he was confronted by Epps, who had a pistol in his hand and had just fatally wounded [Walker]." Id. at ----, 789 S.E.2d at 685 (alteration in original). Specifically, the defendant in Lee
argue[d] that, having undertaken to instruct the jury according to N.C.P.I.-Crim. 206.10, the trial court erroneously omitted the disputed sentence of the pattern jury instruction [ ("Furthermore, the defendant has no duty to retreat in a place where the defendant has a lawful right to be.") ], and was further required to read N.C.P.I.-Crim. 308.10 in its entirety.
Id.[1] While it would seem that basic rules of statutory construction indicate that a no duty to retreat instruction should have been given *490 in Lee , see N.C.G.S. § 14-51.3 ; N.C.P.I.-Crim. 308.10, in reviewing for plain error, this Court nevertheless disagreed:
[The] Defendant's argument, that a different verdict probably would have been reached but for the omission of a no *775 duty to retreat jury instruction, presumes [the] Defendant was in a place where he had a lawful right to be, for purposes of a no duty to retreat defense , when he shot [the victim].
Id. (emphasis added).[2] Indeed, this Court in Lee goes on to quote State v. Pearson , 288 N.C. 34, 215 S.E.2d 598 (1975), stating that "where the person attacked is not in his own dwelling, home, place of business, or on his own premises , then the degree of force he may employ in self-defense is conditioned by the type of force used by his assailant." --- N.C.App. at ----, 789 S.E.2d at 685 (emphasis added in Lee ) (quoting Pearson , 288 N.C. at 43, 215 S.E.2d at 605 ).[3]
Ultimately, the Court in Lee concluded as follows:
[T]o the extent [the] language [of N.C.G.S. § 14-51.3(a)(1) ] can be characterized as extending the no duty to retreat defense to any public place, it is conditioned upon the reasonableness of a person's belief that the use of deadly force was necessary under the circumstances. In other words, the right to stand one's ground in "any public place" is conditioned as an initial matter upon whether the defender was justified in the use of self-defense without regard to the physical setting in which the confrontation occurred. This is consistent with case law predating N.C.G.S. § 14-51.3(a)(1), which the General Assembly enacted in 2011.
....
The statutory reference to "any place [one] has a lawful right to be" does not change our essential analysis *776 regarding Defendant's duty to retreat, since the right to use self-defense is not limited spatially, and the statutory presumption favoring a no duty to retreat instruction remains limited to one's home, motor vehicle, or workplace .
....
Defendant was not entitled to a presumption that his use of deadly force was reasonable under the circumstances . There was no evidence that [the victim] ever entered Defendant's home or yard. It is undisputed that when Defendant shot [the victim], Defendant was standing in the intersection of a public street several houses down from his residence, not within his home, motor vehicle, or workplace. Where the evidence is such that a jury could reasonably find a defender was justified in the use of self-defense in any other setting, a no duty to retreat instruction does not change the analysis. Accordingly, even considering the evidence in the light most favorable to Defendant, we are unable to conclude that, if the trial court's instruction on self-defense had included a no duty to retreat instruction, Defendant "probably would not have been convicted of second-degree murder."
Id. at ----, 789 S.E.2d at 686-87 (emphasis added) (citations omitted).
Defendant in the instant case, similar to the defendant in Lee , contends that N.C. Gen. Stat. § 14-51.3 applies to the facts of this case and that defendant is entitled to an instruction that he had no duty to retreat because he was in a "place he ... ha[d] the lawful right to be," see N.C.G.S. § 14-51.3(a), namely, the grounds of the Bay Street Apartment complex where he lived with his mother.
*491 Further, defendant contends the trial court improperly relied on N.C. Gen. Stat. § 14-51.2, and argues this case is controlled by N.C. Gen. Stat. § 14-51.3.
The evidence at trial tended to show as follows: About ten days prior to the shooting, Fogg assaulted defendant in a parking area of the Bay Tree Apartments, breaking defendant's jaw, which required surgery and was thereafter wired shut. Fogg had a large knife on him the night of the assault. Following this assault, the security guard for the apartment complex began trespass proceedings against Fogg based on Fogg's beating of defendant and another incident in which Fogg cut off a cat's head. Defendant also testified that after the assault he began carrying *777 a gun because he feared for his life and, further, that he became even more afraid of Fogg when he learned that Fogg was a mixed martial arts fighter and boxer.
The night of the shooting, defendant was heading to the breezeway of Building 114 where he lived with his mother. However, upon seeing Fogg arrive at the apartment complex, defendant left the breezeway of his building, and started running towards Building 109. Defendant testified he did so because he was afraid and wanted to avoid encountering Fogg.
But Fogg spotted defendant at Building 109 and started approaching him using a loud aggressive voice and making hand motions. Defendant saw that Fogg was again armed with a knife, and defendant testified he thought Fogg was going to either beat him or cut him with the knife. Fogg threatened defendant, telling him he had five minutes to get away, at which point defendant pulled his gun out and pointed it at Fogg, hoping to scare Fogg into leaving. Defendant testified on direct as follows:
Q. What did [Fogg] do after you pointed your gun at him?
A. He said, excuse my language, he said, oh, n****r, you wanna shoot me?
Q. Then what did he do?
A. He started reaching for his knife. He started trying to come towards me, that's when I cocked my gun back and I just started shooting.
Q. How many times did you shoot him?
A. I don't know, because Mr. Fogg still coming towards me. So I didn't know if he was shot or not.
Q. When-did there come a time in the shooting process that you stopped?
A. Yes, sir it was.
Q. Why?
A. Because I seen Mr. Fogg grab his chest like that and he started stumbling.
Q. And what did you do?
A. I panicked and ran.
Q. Before Mr. Fogg grabbed his chest, did you know if you hit him in any of those prior shots?
*778 A. No, sir, I did not.
Q. Did you ever see him fall?
A. No, sir, I did not.
Q. Why did you run from him?
A. Because I felt like it was-that was the time for me that I can get away from him.
Q. Before you pulled your gun, why didn't you turn tail and run?
A. Because I felt like if I would have turn my back against him, he would have came up from behind me and hit me in the jaw again.
Q. Had he done that before?
A. Yes, sir, he did.
Defendant's location on the grounds of the apartment complex where he lived at the time of the shooting is not materially different from that of the defendant in Lee , who was on a public street by his home. See --- N.C.App. at ----, 789 S.E.2d at 687. Furthermore, at trial, defense counsel requested (but the trial court rejected[4] ) pattern jury *492 instruction 308.10,[5] which this Court in Lee concluded was not erroneously omitted *779 from the jury instructions, despite the fact that the defendant in Lee was in a place he had the lawful right to be (the street outside his home) when he met deadly force with deadly force, see id. , which is precisely what happened in the instant case.
However, even if the facts in the instant case would have supported a no duty to retreat instruction based on N.C.G.S. § 14-51.3(1), defendant's argument that the trial court improperly relied on N.C.G.S. § 14-51.2 by determining that the no duty to retreat presumption applies solely to circumstances where a person is attacked in his own home, business, or vehicle, must fail based on Lee .
Accordingly, pursuant to this Court's analysis and holding in Lee and the requirement of In re Civil Penalty that "[w]here a panel of the Court of Appeals has decided the same issue, ... a subsequent panel of the same court is bound by that precedent," 324 N.C. at 384, 379 S.E.2d at 37, and I am unable to see a way to distinguish this case from Lee , I would hold that this Court's opinion in Lee forecloses us from finding error in the trial court's failure to instruct the jury that defendant had no duty to retreat before using deadly force where he was in a place he had a lawful right to be. I reluctantly dissent from this portion of the majority opinion.[6]
II
The majority also agrees with defendant's argument that the trial court erred in sustaining the State's objections to evidence of specific acts of violence committed by the victim on other individuals and this constitutes reversible error as defendant was prevented from exercising his constitutional right to present a complete defense. According to the majority, defendant was entitled to present testimony of three character witnesses regarding both defendant's reputation for violence and also specific acts of violent conduct committed by Fogg in order to show that Fogg, not defendant, was the aggressor. I respectfully disagree.
The majority otherwise sets forth the law regarding when a defendant claiming self-defense can present evidence of the victim's character. However, I would also add that "[i]n self-defense cases, the character of the victim for violence is relevant only as it bears upon the reasonableness of defendant's apprehension and use of force, which are essential *780 elements of the defense of self-defense." State v. Shoemaker , 80 N.C.App. 95, 101, 341 S.E.2d 603, 607 (1986) (citation omitted).
In the instant case, defendant was allowed to present three witnesses who testified that they knew Fogg and understood him to be violent and have a reputation for violence and aggression. The witnesses, however, were prohibited from testifying about specific prior acts of aggression committed by Fogg. Before allowing defendant's character witnesses to testify, the trial court ruled as follows: "[P]rior acts of aggression are not an essential element of self defense. Aggressiveness on this occasion is an essential element, but prior acts of aggressiveness is [sic] circumstantial evidence of aggressiveness on this occasion, it is not an essential element . And therefore, it does not fall under 405[ (b) ]." Thus, where the trial court allowed the jury to hear evidence of Fogg's reputation for aggressiveness and violence from three separate witnesses, I can discern no abuse of discretion in the trial court's ruling that the witnesses could not also testify about specific instances of Fogg's violent or aggressive conduct.
*493 Even assuming arguendo the trial court erred in this respect, defendant cannot show that "had the error in question not been committed, a different result would have been reached at the trial[,]" N.C. Gen. Stat. § 15A-1443(a) (2015), nor that the error was not harmless beyond a reasonable doubt where, as here, a defendant claims his constitutional rights have been violated, id. § 15A-1443(b) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt.").
During the trial, considerable evidence of Fogg's aggressive and violent behavior was heard by the jury, including the following: (1) the jury viewed a video a total of three times which showed part of the incident on 23 June 2014 where Fogg hit defendant several times, breaking his jaw in three places; (2) defendant testified in detail about the violent nature of the fight he had with Fogg on 23 June 2014 and the injuries he sustained as a result; (3) defendant's counsel questioned Fogg at length on cross-examination about his criminal background, including Fogg's convictions for assault on a female, assault inflicting serious injury with a minor present, felonious assault inflicting serious bodily injury, two counts of simple assault, and assault inflicting serious injury; (4) defendant's counsel questioned Fogg about his training as a mixed martial arts fighter and boxer who sometimes fought for money; (5) defendant was allowed to testify that he had heard Fogg had beaten up other people;
*781 and (6) defendant presented testimony from three witnesses regarding Fogg's reputation for violence and aggression.
Defendant was able to present ample evidence of Fogg's reputation for violence from which the jury could infer that Fogg was the aggressor on 4 July 2014. Therefore, any error committed by the trial court in refusing to allow defendant's three witnesses to testify to specific instances of Fogg's violent behavior in addition to their testimony about his general reputation for violence, was not an abuse of discretion. Furthermore, it did not negatively impact defendant's ability to present a complete defense and, as such, I believe it was harmless beyond a reasonable doubt.
III
The majority also holds that the trial court committed prejudicial error in denying defendant's motion to continue after defendant's counsel received additional information regarding Fogg's violent and assaultive behavior the night before trial, and that such error violated defendant's constitutional rights to effective assistance of counsel and to present a defense. Again, I respectfully disagree.
"Ordinarily, a motion to continue is addressed to the sound discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." State v. Taylor , 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001) (citing State v. Searles , 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981) ). However, "[a] significant limitation on that discretion occurs where denial of a continuance results in the violation of a defendant's right to due process...." State v. Roper , 328 N.C. 337, 349, 402 S.E.2d 600, 606 (1991). "When a motion to continue raises a constitutional issue, the trial court's ruling is fully reviewable on appeal." Taylor , 354 N.C. at 33, 550 S.E.2d at 146 (citation omitted); see State v. Graham , 200 N.C.App. 204, 214, 683 S.E.2d 437, 444 (2009) ("The standard of review for alleged violations of constitutional rights is de novo ." (citation omitted)).
On 24 October 2014, defendant's counsel filed a notice of self-defense and served it on the State. On 4 December 2014, defendant's counsel sent an email to the Assistant District Attorney handling the case indicating defendant's counsel had information regarding prior incidents of assaultive behavior involving Fogg. On 10 December 2014, the night before the trial was to start, the Assistant District Attorney emailed defendant's counsel some other reports involving Fogg, including some where charges were not filed.
*782 After receiving this information, defendant's counsel moved for a continuance, stating he needed additional time to "attempt to develop additional character evidence of the victim ... for aggressive violent behavior," but admitted he had not specifically requested *494 information about uncharged, acquitted, or dismissed conduct. The trial court denied the motion.
The next day, defendant's counsel asked to renew his motion on the ground that defendant's due process rights were being violated in that counsel was being prevented from presenting a defense and he was providing ineffective assistance of counsel. The trial court denied the motion.
To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense.... [T]o establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
State v. Allen , 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (internal citations omitted).
Here, defendant's counsel did not neglect to move for a continuance; he did so, but the trial court denied the motion. That the motion was denied is not indicative that counsel's performance was deficient; defendant's counsel properly made the motion, and he cannot be accused of providing ineffective assistance to his client on this basis. Defendant's argument to the contrary should be overruled.
With regard to defendant's constitutional argument, which we review de novo , see Graham , 200 N.C.App. at 214, 683 S.E.2d at 444, I would find no error in the trial court's denial of defendant's motion to continue. Defendant's counsel reported to the trial court that defendant's investigator was able to locate two witnesses from the list provided to him by the State the night before trial, one of whom testified about his opinion of Fogg's violent and aggressive behavior as well as Fogg's reputation in the community for violence and aggression. In addition, two other witnesses testified for defendant regarding Fogg's reputation for violence and aggression. Here, where defendant presented three witnesses to testify that Fogg was an aggressive and violent individual and had such a reputation in the community, defendant was able to properly present his claim of self-defense. Therefore, the trial court's denial of his motion to continue did not deprive him of his constitutional right to present a defense.
*783 In conclusion, for the reasons stated herein and as especially emphasized by In re Civil Penalty , 324 N.C. at 384, 379 S.E.2d at 37, I am constrained to find no error in the judgment of the trial court and therefore respectfully dissent.

N.C.P.I 308.10 reads as follows:
308.10 SELF-DEFENSE, RETREAT-INCLUDING HOMICIDE (TO BE USED FOLLOWING THE SELF-DEFENSE INSTRUCTIONS WHERE RETREAT IS IN ISSUE).
NOTE WELL: This instruction is to be used if the evidence shows that the defendant was at a place where the defendant had a lawful right to be, including the defendant's own home or premises, the defendant's place of residence, the defendant's workplace, or in the defendant's motor vehicle, when the assault on the defendant occurred.
If the defendant was not the aggressor and the defendant was [in the defendant's own home] [on the defendant's own premises] [in the defendant's place of residence] [at the defendant's workplace] [in the defendant's motor vehicle] [at a place the defendant had a lawful right to be ], the defendant could stand his ground and repel force with force regardless of the character of the assault being made upon the defendant. However, the defendant would not be excused if the defendant used excessive force.
N.C.P.I.-Crim. 308.10 (June 2012) (second emphasis added) (footnote omitted).

Incidentally, if the defendant in Lee was somehow not in a place where he had a lawful right to be-the public street outside his home-I struggle to think of a place where he would have the lawful right to be.

Notably, however, Lee omits highly relevant language which immediately follows the passage it quotes from Pearson :
If the assailant uses nondeadly force, then generally deadly force cannot be used by the person attacked; provided there is no great disparity in strength, size, numbers, etc., between the person attacked and his assailant. However, if the assailant uses deadly force, then the person attacked may stand his ground and kill his attacker if he believes it to be necessary and he has a reasonable ground for such belief.
Pearson , 288 N.C. at 43, 215 S.E.2d at 605 (emphasis added).

The following colloquy took place during the charge conference:
[Defense Counsel]: Your Honor, I would object to the part of the charge where you say under North Carolina law and statutory definition, [the no duty to retreat rule] doesn't apply to this case. Instead, I would ask this Court to give the pattern 308.10, that includes the parenthetical in a place the Defendant had a lawful right to be. Because I think that must be based on common law, state-or state of the general common law. Otherwise it would make no sense to put it at the end of a parenthetical. If a pattern exists, I think [the] Court should just go with the pattern.
THE COURT: But then I would still need to explain to them that I have determined as a matter of law none of those places apply in this case.
[Defense Counsel]: Well, except the last one, at a place the Defendant had a lawful right to be.
THE COURT: No, I've determined as a matter of law that that does not apply to this case.

See supra note 1 and accompanying text.

I would note that I write this dissent with the awareness that the N.C. Supreme Court has allowed the defendant's petition for discretionary review in State v. Lee , --- N.C.App. ----, 789 S.E.2d 679 (2016), review allowed , --- N.C. ----, 796 S.E.2d 790 (2017), and, assuming it reverses the Court of Appeals' opinion in Lee , I acknowledge that this portion of the dissent would be moot.